**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff,* | |
| v. | Civil No. ELH-23-01921 |
| PATRICK TORMAY BRITTON-HARR; PROVISTA HEALTH, LLC; AMS ONSITE, INC.; BRITTON-HARR ENTERPRISES, INC.; COASTAL LABORATORIES, INC.; and COASTAL MANAGEMENT GROUP, INC., | |
| *Defendants.* | |

**ORDER FOR DEFAULT JUDGMENT AGAINST PATRICK TORMAY BRITTON-HARR; PROVISTA HEALTH, LLC; AMS ONSITE, INC.; BRITTON-HARR ENTERPRISES, INC.; COASTAL LABORATORIES, INC.; AND <u>COASTAL MANAGEMENT GROUP, INC.</u>**

In July 2023, the United States filed suit against defendants Patrick Britton-Harr ("Britton-Harr"); Provista Health, LLC ("Provista"); AMS Onsite, Inc. ("AMS"); Britton-Harr Enterprises, Inc. ("Britton-Harr Enterprises" or "BHE"); Coastal Laboratories, Inc. ("Coastal" or "Coastal Labs"); and Coastal Management Group, Inc. ("Coastal Management") (collectively, the "Defendants"). *See* ECF 1 (the "Complaint"). The Complaint, over fifty pages in length, is lodged, *inter alia*, under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, alleging that "Britton-Harr and his wholly owned companies defrauded Medicare of over $7 million." ECF 31-1 at 1; *see also* ECF 1.

In sum, the government contends that Britton-Harr "sought to profit off the COVID-19 pandemic by taking advantage of nursing homes that were desperate to obtain COVID-19 tests for their patients." ECF 29-1 at 3 (citing ECF 1 at 4). To effectuate his scheme, "he created various corporate entities to offer COVID-19 testing for the nursing homes, but only if he could also submit

a large volume of claims to Medicare for expensive – but medically unnecessary – respiratory panel tests for these nursing home patients," without regard to whether they had "any symptoms of a respiratory illness."  ECF 29-1 at 3 (citing ECF 1 at 4).  The respiratory panel included tests for "uncommon organisms . . . ."  ECF 29-1 at 3 (citing ECF 1 at 5).  Medicare claims are false if they claim reimbursement for services or costs that are not reimbursable or were not rendered as claimed.  *See* 42 U.S.C. § 1395y(a)(1)(A).

Britton-Harr is the sole owner of the corporate Defendants, each of which had a role in the scheme.  *See*, *e.g.*, ECF 1 at 8, 9, 19–20, 36–39.  Defendants, through counsel, waived service of the Complaint, pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  ECF 4; ECF 5; ECF 6; ECF 7; ECF 8; ECF 9.[1]  The response to the Complaint was due by September 18, 2023.  However, Defendants failed to respond.

On September 25, 2023, the Clerk entered an Order of Default against the Defendants.  ECF 17.  Also on September 25, 2023, the Clerk mailed a "Notice of Default" to each defendant, advising that they had 30 days to move to vacate the Order of Default.  ECF 18.  On or about October 4, 2023, the Notice of Default was returned by the postal service as "Not Deliverable As Addressed Unable To Forward" with respect to Coastal Management (ECF 19); AMS (ECF 20); Britton-Harr Enterprises (ECF 21); and Provista (ECF 22).  Notably, parties to litigation have a continuing obligation to provide the Clerk with a current address.  *See* Local Rule 102.1(b).  No defendant moved to vacate the Order of Default.

Then, on November 30, 2023, the government filed a "Motion for Default Judgment" against all Defendants (ECF 29), as well as a supporting memorandum.  ECF 29-1 (collectively,

---

[1] The same attorney agreed to all the waivers.  However, he never entered an appearance.

the "Motion"). Additionally, the government filed two exhibits in support of the Motion: the Declaration of Robbie Spivey (ECF 29-2, the "Spivey Declaration") and the Declaration of Jonathan Hoerner, Esquire (ECF 29-3, the "Hoerner Declaration"). Spivey is a Data Analyst employed with the United States Department of Justice, Civil Division, Commercial Litigation Branch, Fraud Section. ECF 29-2 at ¶ 2. Hoerner is a Trial Attorney employed with the United States Department of Justice, Civil Division, Fraud Section. ECF 29-3 at ¶ 1. Hoerner is one of several lawyers representing the government in this case. *Id.*

Defendants have not submitted an opposition to the Motion. And, under Fed. R. Civ. P. 8(b)(6), "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."

On January 3, 2024, the government filed a "Motion to Hold Patrick Britton-Harr in Contempt" (ECF 31), supported by a memorandum (ECF 31-1) (the "First Contempt Motion") and six exhibits. ECF 31-2 to ECF 31-7. The First Contempt Motion sought to hold Britton-Harr in contempt for his prohibited sale of a property, for which he received $575,000. ECF 31-1 at 1; *see also* ECF 2; ECF 2-1; ECF 11. And, it sought "to prevent the dissipation of assets by requiring him to place $575,000 in the Registry of the Court." ECF 31-1 at 1. By Order of January 5, 2024, I ordered defendant to personally appear and show cause at a hearing to be held on February 6, 2024. ECF 33.

A show cause hearing was held on February 6, 2024, at which Britton-Harr appeared. ECF 37. He requested a postponement in order to obtain counsel. *Id.* Therefore, the Court postponed the show cause hearing. *Id.*

By motion filed on February 13, 2024 (ECF 38), the law firm of Greenberg Traurig LLP ("Greenberg Traurig") entered a limited appearance on behalf of Britton-Harr "for the sole purpose

3

of . . . represent[ing] him at the contempt hearing" (*id.*, ¶ 3) regarding the government's motion to hold Britton-Harr in contempt (ECF 31). The Show Cause hearing was reset for March 8, 2024. ECF 40.

In a status report filed by former counsel for defendant Britton-Harr on March 1, 2024 (ECF 47), counsel addressed the government's First Contempt Motion (ECF 31, ECF 31-1), and conceded that the facts established defendant's civil contempt. *Id.* at 1. Accordingly, counsel consented to the entry of an order granting the government's First Contempt Motion, and requiring defendant to deposit $575,000 into the Court's registry. *Id.* at 3.

Therefore, by Order of March 4, 2024, I granted the government's First Contempt Motion. ECF 48. And, I ordered defendant to deposit $575,000 into the Court's Registry. *Id.* In addition, I cancelled the show cause hearing, as moot. *Id.*

Following the Order of April 30, 2024 (ECF 48), Britton-Harr deposited $32,426 into the Registry of the Court. *See* May 2, 2024 Docket entry; *see also* ECF 51 at 1. In Britton-Harr's status report of May 3, 2024 (ECF 51), he averred that he "does not have the immediate ability to pay the $575,000 to purge the contempt . . . ." *Id.* at 1. And, by Order of May 31, 2024 (ECF 55), I granted the motion of Greenberg Traurig to withdraw from the case. *See also* ECF 54. No additional payments have been received by the Court. *See* Docket.[2]

On June 14, 2024, the government filed another motion to hold Britton-Harr in civil contempt with regard to his failure to provide discovery, as set forth in ECF 30-3. ECF 59. The motion is supported by a memorandum (ECF 59-1) (collectively, the "Second Contempt Motion") and several exhibits. ECF 59-2 to ECF 59-7. By Order of June 21, 2024 (ECF 60), I directed

---

[2] Further discussion regarding the government's First Contempt Motion (ECF 31) can be found in the Show Cause Order of June 21, 2024. ECF 60.

Britton-Harr to show cause at a hearing on July 31, 2024, as to why he should not be held in contempt for failure to provide the discovery requested in ECF 30-3. *Id.* at 7.[3]

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. Upon consideration of the Motion (ECF 29), and the record herein, the Court hereby finds and rules as follows:

1.    On July 18, 2023, the United States filed a Complaint (ECF 1) against Defendant Britton-Harr and various entities that he owns and controls: Provista; AMS; BHE; Coastal; and Coastal Management. *Id.* at 8, 19. AMS marketed an infection control program called "Sterisis." *Id.* at 19. Britton-Harr created Coastal Labs to purchase Provista, an Arizona lab already enrolled with Medicare, to allow him to submit claims to Medicare for payment. *Id.* at 19–20. Britton-Harr also owned Coastal Management, which provided marketing and sales services for Coastal Labs. *Id.* at 9. And, Britton-Harr created BHE to pay his personal expenses as well as a salary for his work on behalf of AMS, Coastal Labs, and Coastal Management. *Id.* at 9, 48.

2.    The Complaint contains the following five counts, lodged under federal and state law, each asserted against all Defendants: Presenting False Claims for Payment, in violation of 31 U.S.C. § 3729(a)(1)(A) (Count I); Making or Using False Records or Statements, in violation of 31 U.S.C. § 3729(a)(1)(B) (Count II); Conspiracy to Submit False Claims, in violation of 31 U.S.C. § 3729(a)(1)(C) (Count III); Unjust Enrichment (Count IV); and Payment by Mistake of Fact (Count V).

---

[3] By Order of June 24, 2024 (ECF 61), I directed the government "to file a memorandum discussing the impact of an entry of default judgment on its pending [Second] Contempt Motion and discovery pursuits." *Id.* at 2. And, on July 8, 2024, the government filed a "Memorandum from the United States Addressing the Impact of an Entry of Default Judgment on Pending Civil Contempt Motion and Financial Discovery." ECF 64.

3.     Through counsel, Defendants waived service of the Complaint, pursuant to Fed. R. Civ. P. 4(d).  ECF 4 to ECF 9.  Defendants were required to respond to the suit by September 18, 2023.  By then, no attorney had entered an appearance for any of the Defendants, and Defendants failed to plead or otherwise respond to the Complaint.

4.     The Clerk entered an Order of Default against each defendant on September 25, 2023.  ECF 17.

5.     The Clerk mailed a Notice of Default ("Notice") to each defendant on September 25, 2023.  ECF 18.  The Notice advised Defendants of the right to move to vacate the Order of Default within 30 days.  *Id.*  However, the Notice was returned as undeliverable as to Coastal Management (ECF 19); AMS (ECF 20); Britton-Harr Enterprises (ECF 21); and Provista (ECF 22), in contravention of the obligation of a litigant under Local Rule 102.1(b) to provide the Clerk with a current address.

6.     Defendant Britton-Harr's Notice of Default was not returned.  Nor was Notice of Default returned as to Coastal.  *See* Docket.

7.     No defendant moved to vacate the Order of Default.  *See* Docket.

8.     Based on the Order of Default, all factual allegations in the Complaint are deemed admitted, except those pertaining to damages.  *See* Fed. R. Civ. P. 8(b)(6)); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (explaining that, when ruling as to default judgment, the court accepts as true the well pleaded factual allegations in the Complaint as to liability); *United States v. Bob Bakers Golden Servs. Inc.*, PX-22-191, 2023 WL 3304897, at *2 n.1 (D. Md. May 8, 2023) (citing *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005)).

9.     The factual allegations in the Complaint satisfy the four elements for a claim under the False Claims Act: (1) there was a false statement or fraudulent course of conduct; (2) made or

carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit monies due.  *See*, *e.g.*, *United States v. Walgreen Co.*, 78 F.4th 87, 92 (4th Cir. 2023).

10.     The first element, a false statement or fraudulent course of conduct, is satisfied by Defendants' submission, or causing the submission, of thousands of claims for respiratory panel laboratory tests that were not reasonable and medically necessary.  Defendants marketed and solicited respiratory panel laboratory tests from beneficiaries without symptoms of an illness, and Medicare does not cover such testing for patients without symptoms of an illness.  ECF 1 at 36–39.  Defendants' fraudulent course of conduct also included submissions, or causing the submissions, of thousands of claims of respiratory panel laboratory tests that were not ordered by the beneficiary's physician (or other authorized provider), and therefore, were not reimbursable by Medicare.  *Id.* at 30–31.

11.     In addition, defendants submitted, or caused to be submitted, 348 claims for respiratory panel tests with the date of service on the claim after the beneficiary's date of death.  *Id.* at 28.  Defendants also used inaccurate procedure codes to fraudulently obtain payment from Medicare for respiratory panel tests not covered by Medicare and concealed their use of reference labs to evade detection of their violation of the laws limiting the use of reference labs.  *Id.* at 42–46.

12.     Each defendant played a role in the submission of the false claims described above.  Defendant Britton-Harr personally directed the scheme that resulted in the submission of these false claims.  *Id.* at 46–49.  Defendant Britton-Harr owned the other defendant companies and directed their fraudulent conduct.  For example, Provista submitted false claims to the government.  Coastal caused the submission of false claims through its ownership of Provista and by directing

Provista's fraudulent conduct. In particular, Coastal caused the submission of false claims by entering into agreements with the nursing homes to obtain referrals for respiratory tests and the beneficiaries' billing information to use to submit the false claims. Defendants AMS and Coastal Management caused the submission of false claims by providing marketing services to solicit nursing homes to refer beneficiaries to Coastal and Provista. Defendant Britton-Harr Enterprises facilitated the submission of false claims by paying Britton-Harr for his purported work in carrying out the scheme to submit false claims.

13.    The second element, scienter, is satisfied because the Defendants acted with actual knowledge or "deliberate ignorance of the truth," or "reckless disregard of the truth," while carrying out this scheme. *See* 31 U.S.C. § 3729(b); *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 750 (2023).[4]

14.    To illustrate, one of the nursing homes warned defendant Britton-Harr that it was receiving test results from Provista/Coastal Labs for respiratory panels that were not ordered. ECF 1 at 33. In addition, the former owner of Provista sent an email to Britton-Harr on July 2, 2020, informing Britton-Harr that the U.S. Department of Health and Human Services, Office of Inspector General ("OIG"), had recently released a workplan to address fraud and abuse issues and advised Britton-Harr: "'I think you should run this by your regulatory council [sic].'" *Id.* at 39. Britton-Harr also received a memorandum written by legal counsel for an outside laboratory that warned that a lab must document the medical necessity "of each and every test ordered." *Id.* The email warned that OIG is "'looking closely'" at COVID testing for fraud and abuse. *Id.* And, Britton-Harr ignored a warning from "a potential physician partner who explained that the

---

[4] Surprisingly, the government fails to cite *Schutte* in its discussion of scienter. *See* ECF 29-1 at 6. *Schutte* was decided about six weeks before suit was filed.

respiratory panel testing might not be considered medically necessary absent clear documentation showing that the ordering provider intended for the particular tests to be performed." ECF 29-1 at 7 (citing ECF 1 at 40).

15.     Each defendant possessed the required scienter; defendant Britton-Harr was the sole owner and director of the defendant companies; and Britton-Harr's knowledge is imputable to each of the defendant companies. ECF 1 at 7–10.

16.     The claims submitted, or caused to be submitted, by the Defendants for tests that were not ordered by a physician were material to the government's decision to pay, because Medicare does not reimburse for tests that are not ordered by a licensed healthcare provider. 42 C.F.R. § 410.32(a). Likewise, the claims submitted by the Defendants for tests that were not reasonable and medically necessary were also material, because Medicare does not reimburse for such tests. 42 U.S.C. § 1395y(a)(1)(A).

17.     The causation element of the False Claims Act, in carrying out the fraudulent scheme, is satisfied as to all Defendants:

   a.   Defendant AMS marketed the fraudulent scheme to nursing homes and entered into contracts with those nursing homes to arrange for respiratory panel tests to be performed by Defendants Provista and Coastal. ECF 1 at 53. And, defendant AMS caused false claims to be submitted by inducing nursing homes to enter into contracts with AMS and Coastal for respiratory panel tests that were not ordered or not reasonable and medically necessary. *Id.* at 47–48.

   b.   Defendant Coastal Management provided marketing services to AMS to help AMS induce the nursing homes to enter into contracts with Defendants AMS and Coastal. *Id.* at 53. Defendant Coastal Management caused false claims to be submitted by

providing marketing services to AMS to assist in obtaining referrals from the nursing homes for the respiratory panel tests. *Id.* at 47–48.

    c.   Defendant Coastal entered into contracts with the nursing homes to perform respiratory panel tests, purchased Provista for the purpose of submitting claims to Medicare for the respiratory panel tests, transferred the Medicare funds received by Provista into Coastal's bank accounts, and further transferred those funds to the other Defendants. *Id.* at 53. Defendant Coastal caused the submission of false claims by using Provista (its purported subsidiary corporate entity) to submit false claims for the respiratory panel tests. *Id.* at 48.

    d.   Defendant Provista caused the submission of false claims by submitting the claims to Medicare using its National Provider Identifier number. *Id.*

    e.   Defendant Britton-Harr Enterprises received the Medicare funds from Provista and Coastal and funneled money received from Medicare to Britton-Harr for his work in carrying out the fraudulent scheme. *Id.* at 48–49. BHE paid Britton-Harr a purported salary for his work in carrying out this scheme and paid Britton-Harr's personal expenses. *Id.* at 9, 53.

    f.   Defendant Britton-Harr directed the actions of Defendants AMS, Provista, Coastal, Coastal Management, and Britton-Harr Enterprises. *See*, *e.g.*, *id.* at 10, 53. He also marketed the scheme to nursing homes, managed the funds received by Medicare, and transferred a portion of the funds received by Medicare for his personal use. *Id.* He also directed the submission of claims to Medicare. *Id.* at 47–49.

18.    The submission of false claims was the necessary, foreseeable, and obvious consequence of the Defendants' conduct.

19.     As discussed, the plaintiff's factual allegations, other than those pertaining to damages, are deemed admitted.  *See* Fed. R. Civ. P. 8(b)(6).  If the court is satisfied that liability has been established, it must then determine the appropriate amount of damages.  *Bob Bakers Golden Servs. Inc.*, PX-22-191, 2023 WL 3304897, at *2.  Notably, allegations "relating to the amount of damages" are not deemed admitted based on a defendant's failure to respond to a suit.  Fed R. Civ. P. 8(b)(6); *see Monge v. Portofino Ristorante*, WDQ-09-3144, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (adopting the report and recommendation of then-Magistrate Judge Paul W. Grimm)[5]; *Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, Inc.*, DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."); *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, 6:09-cv-4, 2009 WL 1872535, at *1 (W.D. Va. June 30, 2009) ("Upon default judgment, Plaintiff's factual allegations are accepted as true for all purposes excluding determination of damages.").

20.     The court must make an independent determination regarding allegations as to damages.  *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999).  In so doing, the court may conduct an evidentiary hearing.  Fed. R. Civ. P. 55(b)(2).  However, the court may also make a determination of damages without a hearing, so long as there is an adequate evidentiary basis in the record to support an award of the requested damages.  *See Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) ("[T]he court may rely on detailed affidavits or documentary evidence to determine the appropriate sum."); *see also Trs. of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011)

---

[5]  Judge Grimm is now a retired United States District Judge.  He authored *Monge* when he was a United States Magistrate Judge.

(determining that, in a case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the damages requested"); *Monge*, 751 F. Supp. 2d at 795 (same); *Pentech Fin. Servs., Inc.*, 2009 WL 1872535, at *2 (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment because plaintiff submitted affidavits and records establishing the amount of damages); *JTH Tax, Inc. v. Smith*, Case 2:06-cv-76, 2006 WL 1982762, at *3 (E.D. Va. June 23, 2006) ("If the defendant does not contest the amount pleaded in the complaint and the claim is for a sum that is certain or easily computable, the judgment can be entered for that amount without further hearing.").

21.     Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  *See In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000) ("When a complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages."). This is meant to enable the defendant to decide whether to expend the resources to defend the action.  *Monge*, 751 F. Supp. 2d at 796.

22.     A party who violates the FCA is liable to the United States for three times the amount of damages which the government sustains, plus a civil penalty per violation.  31 U.S.C. § 3729(a)(1); *Cook Cnty. v. United States ex rel. Chandler*, 538 U.S. 119, 132 (2003).

23.     Moreover, "[w]here one or more persons have committed a fraud upon the government in violation of the FCA, each is joint and severally liable for the treble damages and statutory penalty."  *Mortgages, Inc. v. U.S. Dist. Ct. for the Dist. of Nev.*, 934 F.2d 209, 212 (9th Cir. 1991); *see also United States ex rel. Lutz v. Blue Wave Healthcare Consultants, Inc.*, RMG-14-00230, 2018 WL 11282049, *3 (D.S.C. May 23, 2018).  Accordingly, because the United States

has established all the elements of a claim under the False Claims Act, the United States is entitled to treble damages and civil penalties for which the Defendants are jointly and severally liable. *United States ex rel. Wiser v. Geriatric Psychological Servs.*, Y-96-2219, 2001 WL 286838, at *3 (D. Md. Mar. 22, 2001) (citing *Mortgages*, 934 F.2d at 212–14).

24.     The government seeks recovery only under Count I.  It concedes that it is not seeking damages under Count II, Count III, Count IV, or Count V, because recovery would be duplicative of damages under Count I.  *See* ECF 29-1 at 9–10.

25.     As summarized in the Hoerner Declaration (ECF 29-3) and the Spivey Declaration (ECF 29-2), Defendants submitted a total of 23,162 false claims to Medicare for laboratory tests that were not reasonable and necessary for the diagnosis or treatment of an illness or injury.  ECF 29-2, ¶ 6; ECF 29-3, ¶ 4.  Medicare paid a total of $7,162,914.46 for these false claims.  This sum constitutes damages incurred by the United States.  ECF 29-2, ¶ 7; ECF 29-3, ¶ 10.

26.     As stated, a party who violates the False Claims Act is liable to the United States for three times the amount of damages which the government sustains. 31 U.S.C. § 3729(a)(1); *Cook Cnty.*, 538 U.S. at 132.  Therefore, the United States is entitled to treble damages under the False Claims Act.   Trebling the damages of $7,162,914.46 results in total damages of $21,488,743.38, for which Defendants are jointly and severally liable.  *See also* ECF 29-3, ¶ 10.

27.     In addition, a party who violates the False Claims Act is subject to a civil penalty for each violation.  Section 85.5 of 28 C.F.R. outlines the civil penalty amounts for violations of the False Claims Act.  Relevant here, for violations of the False Claims Act occurring on or after November 2, 2015, and assessed after February 12, 2024, the civil penalty amounts range from a minimum of $13,946 to a maximum of $27,894 for each false claim submitted to the government. 28 C.F.R. § 85.5 (Table 1, column 7).

28.      "The determination of the amount of the statutory civil penalties rests within the discretion of the district court." *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 501 F. Supp. 2d 51, 56 (D.D.C. 2007) (citing *Cook Cnty.*, 538 U.S. at 1320; *see also United States v. AZ Diabetic Supply, Inc.*, No. 1:22-CV-965-LMB/IDD, 2023 WL 3669378, at *6 (E.D. Va. May 25, 2023) (finding defendant liable for the minimum amount of civil penalties).  Further, "[t]o determine an appropriate award of civil penalties, the Court considers the totality of the circumstances, focusing on factors such as 'the seriousness of the misconduct, the scienter of the defendants, and the amount of damages suffered by the United States as a result of the misconduct.'" *United States ex rel. Landis v. Tailwind Sports Corp.*, 324 F. Supp. 3d 67, 74 (D.D.C. 2018) (quoting *United States v. Speqtrum, Inc.*, 2016 WL 5349196, at *4 (D.D.C. Sept. 23, 2016)).

29.      As explained in the Spivey Declaration (ECF 29-2), "Defendants submitted 348 claims for 154 different beneficiaries that included a date of service for the collection of the test sample after the beneficiary's date of death." *Id.* ¶ 8; *see also* ECF 29-3, ¶ 11.

30.      The United States has discretion under the False Claims Act to accept reduced penalties.  *United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 408 (4th Cir. 2013), *cert. denied*, 574 U.S. 819 (2014).  Indeed, a plaintiff's discretion to willingly accept a lesser judgment "is virtually unbounded." *Id.* at 406 (citing *United States v. Mackby*, 339 F.3d 1013, 1015 (9th Cir. 2003), *cert. denied*, 541 U.S. 936 (2004)).

31.      The United States seeks penalties on fewer than two percent of the false claims at issue.  Nevertheless, as explained in the Hoerner Declaration and Spivey Declaration, the United States seeks the maximum penalty amount for the 348 claims submitted by the Defendants with a date of service listed after the beneficiary's date of death.  The maximum civil penalty amount for

each false claim is $27,894.  *See* 28 C.F.R. § 85.5 (Table 1, column 7).  And, $27,894 multiplied

by 348 false claims would result in $9,707,112.00 in civil penalties.[6]

32.    The civil penalties are assessed in addition to the award of treble damages.  As

indicated, Defendants are liable for treble damages of $21,488,743.38.

33.    In my view, given the amount of treble damages, an assessment of civil penalties

at the bottom of the allowable range is more appropriate and equitable.  Defendants' actions did

not, for example, involve  "particularly vulnerable victims."  *United States ex rel. Landis*, 324 F.

Supp. 3d at 74.  Accordingly, I shall impose a civil penalty of $13,946 for each of the 348 claims.

This totals $4,853,208.

34.    The government does not seek an award of costs incurred in prosecuting this action.

*See* ECF 29-1 at 11 (detailing the "Relief Requested").  Further, the Docket does not reflect any

filing fees or charges that the government has incurred.  *See* Docket.  Therefore, I decline to award

costs to the government.

Accordingly, I find that the requirements of Rule 55(b) of the Federal Rules of Civil

Procedure have been satisfied, and it is hereby **ORDERED** that:

1.  The Motion for Default Judgment (ECF 29) is **GRANTED**.

---

[6] In its proposed Order for Default Judgment, the government incorrectly calculates a
penalty amount of $9,651,324 based on 346 false claims, rather than 348 false claims.  *See* ECF
58 at 6.  However, it is clear from the Spivey Declaration, Hoerner Declaration, and the proposed
Order for Default Judgment itself that the use of 346 false claims in this calculation was an
unintentional error made by the government.  *See* ECF 29-1 ("[T]he United States seeks the
maximum penalty amount for the 348 false claims submitted by the Defaulting Defendants with a
date of service listed after the beneficiary's date of death."); ECF 29-2 at ¶ 8 ("Defendant submitted
348 false claims for 154 different beneficiaries that included a date of service for the collection of
the test sample after the beneficiary's date of death."); ECF 29-3 at ¶ 11 ("Defendants submitted
348 claims for 154 different beneficiaries that included a date of service for the collection of the
test sample after the beneficiary's date of death.").  Therefore, the Court has calculated the civil
penalty amount for 348 false claims.

2. Defendants are jointly and severally liable for $21,488,743.38 in treble damages.

3. Defendants are jointly and severally liable for an additional sum of $4,853,208.00 in civil penalties.

4. By August 9, 2024, the government shall effect personal service upon Defendants of a copy of this Order.

5. Any party may move within 14 days of the date of service of this Order to vacate or rescind this Order.

6. By August 9, 2024, the government shall file or cause to be filed an Affidavit of Service, documenting proof of compliance with paragraph 4 of this Order and Rule 4(l) of the Federal Rules of Civil Procedure.

7. The Second Contempt Motion (ECF 59) is still pending, and is not rendered moot by this Order.  *See* 28 U.S.C. § 3015.  Therefore, the Court will proceed with the contempt hearing as to Mr. Britton-Harr, set for 10:00 a.m. on July 31, 2024.  *See* ECF 60.

8. The Clerk of the Court shall mail copies of this Order to all parties and send electronic notice to counsel via CM/ECF.

**IT IS SO ORDERED**.


DATE: July 17, 2024

                                                    _____/s/_____
                                                    Ellen L. Hollander
                                                    United States District Judge