## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff,* | |
| v. | Civil No. ELH-23-01921 |
| PATRICK TORMAY BRITTON-HARR; PROVISTA HEALTH, LLC; AMS ONSITE, INC.; BRITTON-HARR ENTERPRISES, INC.; COASTAL LABORATORIES, INC.; and COASTAL MANAGEMENT GROUP, INC., | |
| *Defendants.* | |

## MEMORANDUM OPINION

This Memorandum Opinion resolves a motion to vacate a default judgment filed by defendant Patrick Britton-Harr. ECF 75. The motion is rooted in a suit filed by the United States (the "Government") on July 18, 2023, against Britton-Harr as well as five business entities owned by him. ECF 1 (the "Complaint"). The business entity defendants are Provista Health, LLC ("Provista"); AMS Onsite, Inc. ("AMS"); Britton-Harr Enterprises, Inc. ("Britton-Harr Enterprises" or "BHE"); Coastal Laboratories, Inc. ("Coastal" or "Coastal Labs"); and Coastal Management Group, Inc. ("Coastal Management") (collectively, the "Corporate Defendants").

The Complaint, over fifty pages in length, is lodged under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and also asserts common law causes of action for unjust enrichment and payment by mistake. In sum, the Government alleges that "Britton-Harr and his wholly owned companies defrauded Medicare of over $7 million." ECF 31-1 (memorandum in support of government's contempt motion), at 1; *see also* ECF 1. In general, the Government contends that defendants submitted and caused the submission of false claims to Medicare for lab tests that were not

Case 1:23-cv-01921-ELH   Document 83   Filed 10/07/24   Page 2 of 30

performed; lab tests without a practitioner's order; and lab tests that were medically unnecessary. ECF 1; ECF 2-1 (memorandum in support of government motion for prejudgment remedies).[1]

Defendants, through counsel, waived service of the Complaint, pursuant to Fed. R. Civ. P. 4(d).  ECF 4; ECF 5; ECF 6; ECF 7; ECF 8; ECF 9.[2]  The response to the Complaint was due by September 18, 2023.  *Id.*  But, defendants failed to respond.  *See* Docket.

On September 25, 2023, the Clerk entered an "Order Of Default" against all defendants "for want of answer or other defense . . . ."  ECF 17.  Also on September 25, 2023, the Clerk mailed a "Notice of Default" to each defendant, advising that they had 30 days to move to vacate the Order of Default.  ECF 18.  No defendant moved to vacate the Order of Default.

Thereafter, on November 30, 2023, the Government filed a "Motion for Default Judgment" against all defendants (ECF 29), supported by a memorandum of law (ECF 29-1) and exhibits. *See* ECF 29-2; ECF 29-3.  The Government's Certificate of Service reflects that a copy of the motion was mailed to defendants, including Britton-Harr, at addresses on Geneva Place in Tampa, Florida, as well as Compromise Street and Cornhill Street, both in Annapolis, Maryland. ECF 29 at 2.  No defendant responded to that motion.

Months later, by Order of July 17, 2024 (ECF 67), and pursuant to Fed. R. Civ. P. 55(b), the Court granted the Motion for Default Judgment.  *Id.* at 15.  In particular, the Court determined that defendants were jointly and severally liable for $21,488,743.38 in treble damages and for an additional sum of $4,853,208.00 in civil penalties.  *Id.* at 16.

---

[1] The Government also included with the suit a lengthy exhibit detailing Provista's billings to Medicare.  ECF 1-1.

[2] The same attorney agreed to all the waivers.  However, he never entered an appearance.

Of relevance here, I ordered the Government to effect personal service of the Order upon the defendants by August 9, 2024. *Id.* And, the Order provided that any party could "move within 14 days of the date of service of this Order to vacate or rescind this Order." *Id.*

The Government filed an Affidavit of Special Agent Matthew Gray on August 9, 2024. ECF 74. He averred that on July 30, 2024, he personally served the Order upon Britton-Harr at his residence. *Id.* He did not provide the address for the residence, but did so on an earlier occasion. *See* ECF 62.[3]

On August 13, 2024, Britton-Harr filed an "Opposed Motion to Vacate Entry of Default Judgment and Request for Extension of Time to File Responses by Patrick Britton-Harr." ECF 75 (the "Motion") (capitals altered).[4] The Government opposes the Motion. ECF 79. Britton-Harr has not replied, and the time to do so has expired.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. Upon consideration of the Motion (ECF 75), and the record herein, and for the reasons that follow, I shall deny the Motion.

---

[3] On June 28, 2024, Gray filed a "Certificate Of Service" (ECF 62), stating that he hand-delivered copies of ECF 30, ECF 59, and ECF 60, with accompanying exhibits, to Britton-Harr at an address on Fleet Street in Annapolis, Maryland.

[4] Included in the Motion is a verification by Britton-Harr that the contents of the Motion "are true and correct to the best of [his] knowledge and belief." ECF 75 at 5. This verification is labeled "Exhibit 1." *Id.* at 4. In his Motion, Britton-Harr claims to attach as Exhibit 1 "the Declaration in support of Defendant Patrick Britton-Harr." *Id.* ¶ 28. However, no Declaration was submitted.

# I.   Factual Background[5]

On July 18, 2023, the Government filed a Complaint (ECF 1) against Defendant Britton-Harr and various business entities that he owns and controls:  Provista; AMS; BHE; Coastal; and Coastal Management.  *Id.* at 4–7.  The suit was filed on behalf of the United States Department of Health and Human Services ("HHS") and its component, the Centers for Medicare and Medicaid Services.  ECF 1, ¶ 16.

The Complaint contains five counts, lodged under federal and state law, each asserted against all defendants: Presenting False Claims for Payment, in violation of 31 U.S.C. § 3729(a)(1)(A) (Count I); Making or Using False Records or Statements, in violation of 31 U.S.C. § 3729(a)(1)(B) (Count II); Conspiracy to Submit False Claims, in violation of 31 U.S.C. § 3729(a)(1)(C) (Count III); Unjust Enrichment (Count IV); and Payment by Mistake of Fact (Count V).  The following is an account of the facts as alleged in the Complaint.

In sum, the Government contends that Britton-Harr "sought to profit off the COVID-19 pandemic by taking advantage of nursing homes that were desperate to obtain COVID-19 tests for their patients."  *Id*. ¶ 4.  To effectuate his scheme, "Defendant Britton-Harr and the defendant companies he owned . . . agree[d] to perform COVID-19 tests (which at the time were in short supply) at no cost to the nursing homes for their residents, but then also performing and billing Medicare for a large panel of medically unnecessary respiratory pathogen tests."  *Id*. ¶ 5.  The respiratory panel included tests for "uncommon organisms . . . ."  *Id*. ¶ 6.  Medicare claims are false if they claim reimbursement for services or costs that are not reimbursable or were not rendered as claimed.  *See* 42 U.S.C. § 1395y(a)(1)(A).

---

[5] Under Fed. R. Civ. P. 8(b)(6), "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."

According to the Complaint, defendants marketed and solicited respiratory panel laboratory tests from beneficiaries without symptoms of an illness, and Medicare does not cover such testing for patients without symptoms of an illness. ECF 1, ¶¶ 193–210. Defendants' fraudulent course of conduct also included submissions, or causing the submissions, of thousands of claims of respiratory panel laboratory tests that were not ordered by the beneficiary's physician (or other authorized provider), and therefore, were not reimbursable by Medicare. *Id.* ¶¶ 153–63.

In addition, defendants submitted, or caused to be submitted, 346 claims for respiratory panel tests with the date of service on the claim after the beneficiary's date of death. *Id.* ¶¶ 140–43. Defendants also used inaccurate procedure codes to fraudulently obtain payment from Medicare for respiratory panel tests not covered by Medicare and concealed their use of reference labs to evade detection of their violation of the laws limiting the use of reference labs. *Id.* ¶¶ 231–61.

Each defendant allegedly played a role in the submission of the false claims described above. Defendant Britton-Harr personally directed the scheme that resulted in the submission of these false claims. *Id.* ¶¶ 262–83. Defendant Britton-Harr owned the other defendant companies and directed their fraudulent conduct. For example, Provista submitted false claims to the government. Coastal caused the submission of false claims through its ownership of Provista and by directing Provista's fraudulent conduct. Coastal caused the submission of false claims by entering into agreements with the nursing homes to obtain referrals for respiratory tests and the beneficiaries' billing information to use to submit the false claims. AMS and Coastal Management caused the submission of false claims by providing marketing services to solicit nursing homes to refer beneficiaries to Coastal and Provista. Britton-Harr Enterprises facilitated the submission of

false claims by paying Britton-Harr for his purported work in carrying out the scheme to submit false claims.

One of the nursing homes warned Britton-Harr that it was receiving test results from Provista/Coastal Labs for respiratory panels that were not ordered. *Id.* ¶ 172. In addition, the former owner of Provista sent an email to Britton-Harr on July 2, 2020, informing Britton-Harr that the Office of Inspector General ("OIG") of HHS had recently released a workplan to address fraud and abuse issues and advised Britton-Harr: "'I think you should run this by your regulatory council [sic].'" *Id.* ¶ 212. Britton-Harr also received a memorandum written by legal counsel for an outside laboratory that warned that a lab must document the medical necessity "'of each and every test ordered.'" *Id.* ¶ 9. The email warned that OIG is "'looking closely'" at COVID testing for fraud and abuse. *Id.* ¶ 213. And, Britton-Harr ignored a warning from a potential physician partner who explained that "'nursing home respiratory screening may not be considered "medically necessary" . . . .'" *Id.* ¶ 9. He also warned that "clear documentation" showing that the "ordering medical provider . . . intended for a particular test to be done should be documented." *Id.* ¶ 216.

The Government also alleges in the Complaint that "Britton-Harr used funds in the Britton-Harr Enterprises bank accounts to purchase various airplane related items as he started his new aircraft charter company, Aerovanti." *Id.* ¶ 278.

## II.        Procedural Background[6]

As indicated, the Complaint was filed on July 18, 2023.  ECF 1.  Also on July 18, 2023, through counsel, defendants waived service of the Complaint, pursuant to Fed. R. Civ. P. 4(d). ECF 4 to ECF 9.  The waiver of service was docketed by the Government on July 24, 2023.  *Id.*

Along with the suit, the Government filed an application for prejudgment remedies under the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.*, ECF 2.  It was supported by a memorandum of law (ECF 2-1) and many exhibits.  ECF 2-3 to ECF 2-52.  The Government sought, *inter alia*, a Writ Of Attachment as to property located at 32 Cornhill Street in Annapolis, Maryland (the "Cornhill Property").  ECF 2; ECF 2-1.  Tombstone Holdings, LLC ("Tombstone") bought the Cornhill Property for $554,000 in September 2021.  *Id.* at 18.  Britton-Harr owns a 50 percent controlling interest in Tombstone (ECF 2-1 at 15; ECF 2-15 at 4) and Britton-Harr's wife owns a 50 percent non-controlling interest in Tombstone.  ECF 2-1 at 15 n.4; ECF 2-18 at 6.

In the application, the Government also asserted that Britton-Harr is a 51 percent owner of AeroVanti Inc., which, in turn, owns AeroVanti Aviation, LLC.  ECF 2-1 at 15 n.5.  According to the Government, Britton-Harr used those companies to defraud creditors.  ECF 2-1 at 15–16.

By Order of August 3, 2023 (ECF 11), the Court granted the Government's request for a Writ Of Attachment as to the Cornhill Property.  Moreover, the Order of August 3, 2023, stated, *id.* at 2–3:  "[T]he United States shall be allowed to take financial discovery of the Defendants, Tombstone, AeroVanti, Inc., and any other company to which Patrick Britton-Harr has an ownership or equity interest either directly or indirectly."

---

[6] In general, I have attempted to recount events chronologically but also by topic. Therefore, some events will appear temporally out of order.

Then, on August 4, 2023, the Court issued a Writ Of Attachment (ECF 12) that stated: "Tombstone shall not sell, dispose of, mortgage, transfer the title of, or otherwise encumber the aforesaid described property, until further order of the Court." *Id.* at 2.  On the same date, August 4, 2023, the Government mailed the notice and the Writ Of Attachment to Britton-Harr at the following addresses:  (1) 640 Geneva Place, Tampa, FL 33606 (where Britton-Harr was believed to be living in August 2023); and (2) 32 Cornhill Street, Annapolis, MD 21401.  The notice and Writ Of Attachment were delivered to both addresses on August 5, 2023.  ECF 31-1 at 2; ECF 31-4 at 1, 2.[7]

As stated, defendants were required to respond to the suit by September 18, 2023.  ECF 4– ECF 9.  By then, no attorney had entered an appearance for any of the defendants, and defendants failed to plead or otherwise respond to the Complaint.  The next day, September 19, 2023, the Government moved for entry of default.  ECF 16.  The Clerk entered an "Order Of Default" against defendants on September 25, 2023.  ECF 17.  Also on September 25, 2023, the Clerk mailed a "Notice of Default" to each defendant, advising that they had 30 days to move to vacate the Order of Default.  ECF 18.

On or about October 4, 2023, the Notice of Default was returned by the postal service as "Not Deliverable As Addressed Unable To Forward" with respect to four entities:  Coastal Management (ECF 19); AMS (ECF 20); Britton-Harr Enterprises (ECF 21); and Provista (ECF 22).  Britton-Harr's notice, postmarked September 26, 2023, was returned on January 12, 2024.  ECF 35; ECF 35-1.  It was addressed to him at 640 Geneva Place in Tampa, Florida.  ECF 35.

---

[7] The notice of attachment was also mailed to Tombstone's registered agent at 251 Little Falls Drive, Wilmington, DE 19808 on August 4, 2023 (ECF 2-15 at 4) and delivered on August 7, 2023.  ECF 31-4 at 3.

Notably, parties in litigation have a continuing obligation to provide the Clerk with a current address. *See* Local Rule 102.1(b). In any event, neither Britton-Harr nor any business entity moved to vacate the Order of Default.

Then, on November 30, 2023, the Government filed a "Motion for Default Judgment" against all defendants (ECF 29), supported by a memorandum (ECF 29-1) and two exhibits: the Declaration of Robbie Spivey (ECF 29-2, the "Spivey Declaration") and the Declaration of Jonathan Hoerner, Esquire (ECF 29-3, the "Hoerner Declaration"). Of import, the Certificate of Service reflects that the motion was mailed to defendant at two addresses: the Geneva Place address in Tampa, Florida and the Cornhill Street address in Annapolis, Maryland. ECF 29 at 2. No defendant responded to the motion.

On January 3, 2024, while the Motion for Default Judgment was pending, the Government filed a "Motion to Compel a Response to Its Discovery Request" (ECF 30), as well as a supporting memorandum (ECF 30-1) and three exhibits. ECF 30-2 to ECF 30-4. The exhibits consisted of the Declaration of Lisa Russell, Special Agent with HHS – OIG (ECF 30-2); a copy of the "United States' Request for Production of Documents to Patrick Britton-Harr" (ECF 30-3); and the Declaration of Vincent Vaccarella, Esq., Trial Attorney, United States Department of Justice, Civil Division, Fraud Section (ECF 30-4).

In her Declaration, Agent Russell averred that she served the Government's discovery request (ECF 30-3) upon Britton-Harr on September 28, 2023. ECF 30-2; *see also* ECF 30-1 at 2. In his Declaration, Vaccarella stated, ECF 30-4 at ¶ 5: "As of January 3, 2024, Patrick Britton-Harr has not produced a single document or interrogatory response or otherwise contacted anyone at the DOJ or HHS-OIG to discuss the Government's discovery request or the sale of property at 32 Cornhill Street, Annapolis, MD 21401."

By Order of January 3, 2024 (ECF 32), I granted the discovery motion (ECF 30). In particular, I ordered that "Patrick Britton-Harr shall comply with the requirements of the discovery request issued to him by the United States and produce the documents and interrogatory answers requested by that discovery request [*i.e.*, ECF 30-3] within thirty (30) days from the date of this Order." *Id.*

Also on January 3, 2024, the Government filed a "Motion to Hold Patrick Britton-Harr in Contempt" (ECF 31), supported by a memorandum (ECF 31-1) (the "First Contempt Motion") and six exhibits. ECF 31-2 to ECF 31-7. In particular, the Government sought to hold Britton-Harr in contempt because of his sale of the Cornhill Property, for which he received $575,000. That sale was in contravention of the Order of August 3, 2023 (ECF 11), and the Writ Of Attachment of August 4, 2023 (ECF 12). *See* ECF 31-1 at 1. And, the Government sought "to prevent the dissipation of assets by requiring [Britton-Harr] to place $575,000 in the Registry of the Court." *Id.*

By Order of January 5, 2024 (ECF 33), I directed defendant to personally appear and show cause at a hearing on February 6, 2024, as to why he should not be found in contempt for failure to comply with this Court's Orders of August 3, 2023 (ECF 11) and/or August 4, 2023 (ECF 12). In addition, I ordered the Government to serve Britton-Harr with a copy of the Order to Show Cause by January 22, 2024. *See* Docket. Of relevance here, the Order provided: "On September 25, 2023, the Clerk entered an order of default against all defendants. ECF 17." ECF 33 at 2. And, in a footnote, the Order also states: "On November, 30, 2023, the government filed a Motion for Default Judgment against all defendants. ECF 29. The motion is pending." *Id.*

The Court held a show cause hearing on February 6, 2024. ECF 37; *see* ECF 78 (Transcript of February 6, 2024). Britton-Harr appeared at the hearing. The Court reviewed the background

of the case and explained, in part: "The Clerk entered an order of default against all defendants on September 25 of 2023. No one answered the suit. That's what that means. That's at ECF 17. On November 30 of 2023, the Government filed a motion for default judgment against all defendants, ECF 29. That motion is actually pending." ECF 78 at 4–5. Britton-Harr requested a postponement of the hearing, in order to obtain counsel. *Id.* at 23. The Court granted his request and reset the show cause hearing for March 8, 2024. *Id.* at 28–29; ECF 40.

By motion filed on February 13, 2024 (ECF 38), two attorneys with the law firm of Greenberg Traurig LLP moved for entry of a limited appearance on behalf of Britton-Harr "for the sole purpose of . . . represent[ing] him at the contempt hearing." *Id.* ¶ 3. The motion was unopposed, and I granted it by Order of February 14, 2024. ECF 42.

In a status report filed by Britton-Harr's counsel on March 1, 2024 (ECF 47), defense counsel addressed the Government's First Contempt Motion (ECF 31, ECF 31-1). Notably, counsel conceded that the facts established defendant's civil contempt. ECF 47 at 1. Accordingly, counsel consented to the entry of an order granting the Government's First Contempt Motion, and requiring defendant to deposit $575,000 into the Court's registry. *Id.* at 3.

Accordingly, by Order of March 4, 2024 (ECF 48), I granted the Government's First Contempt Motion. And, I ordered defendant to deposit $575,000 into the Court's Registry. *Id.* In addition, I cancelled the show cause hearing set for March 8, 2024. *Id.* And, I requested a status report by April 30, 2024, if defendant did not deposit the funds by that time.

On April 30, 2024, defendant sought a brief extension for submission of a status report as to Britton-Harr's "efforts to deposit the $575,000 in the Court registry . . . ." ECF 49.[8] The Court

---

[8] Curiously, the defense submission at ECF 49 is titled "Status Report and Defendant's Response to Motion For Contempt." In actuality, it was neither a status report nor a response to

granted the extension request. ECF 50.[9]  Soon after, on May 2, 2024, Britton-Harr deposited $32,426 into the Registry of the Court.  *See* Docket; *see also* ECF 51 at 1.  In a status report filed by counsel for Britton-Harr on May 3, 2024 (ECF 51), counsel asserted that defendant "does not have the immediate ability to pay the $575,000 to purge the contempt . . . ."  *Id.* at 1.  No additional payments have been received by the Court from Britton-Harr.  *See* Docket.

The Court also held a telephone conference with counsel for the Government and counsel for Britton-Harr on May 3, 2024.  Counsel for the Government indicated that the Government intended to pursue its request for default judgment.  But, the Court was not satisfied with its proposed order for default judgment, and directed the Government to cure deficiencies by way of a revised proposed order.  Counsel for Britton-Harr asked for an opportunity to respond to the new proposed order for default judgment.  The Court indicated that it would not take any action until the time for defendant to respond had passed.

Then, by Order of May 31, 2024 (ECF 55), I granted the motion of defense counsel from Greenberg Traurig to withdraw from the case (ECF 54).  Thereafter, on June 13, 2024, the Government submitted its revised proposed order for default judgment.  ECF 58.

On June 14, 2024, the Government filed another contempt motion against defendant.  ECF 59.  In particular, it sought to hold Britton-Harr in civil contempt with regard to his failure to provide discovery, pursuant to ECF 30-3.  The motion is supported by a memorandum (ECF 59-1) (collectively, the "Second Contempt Motion") and several exhibits.  ECF 59-2 to ECF 59-7.  By

---

the contempt motion.  Indeed, the Court had already granted the Motion for Contempt, by consent. *See* ECF 48.

[9] The proposed Order submitted by defense counsel, ECF 49-1, is mistakenly titled "Order Granting Government's Motion For Contempt."  But, the text makes clear that the Court granted the request for an extension of time as to submission of the status report.  *See* ECF 49-1; ECF 50.

Order of June 21, 2024 (ECF 60), I directed Britton-Harr to show cause at a hearing on July 31, 2024, as to why he should not be held in contempt for failure to provide the discovery requested in ECF 30-3. *Id.* at 7.

Notably, in the Order of June 21, 2024, I said, *id.* at 8, ¶ 5: "Defendant, who faces possible incarceration, may have a right to counsel. If he cannot afford an attorney, the Court will entertain a timely request for the appointment of counsel." On July 11, 2024, Britton-Harr requested an attorney. ECF 65; *see* ECF 66. Thereafter, Gerald Ruter, Esq. was appointed as counsel for defendant. But, his role is specifically limited to representation of Britton-Harr with respect to the Second Contempt Motion. ECF 77.

On July 30, 2024, Britton-Harr, through counsel, filed a motion to continue the contempt hearing then scheduled for July 31, 2024. ECF 71. By Order of July 30, 2024, the Court granted the request for postponement. ECF 71-1. Thereafter, on August 27, 2024, the Court issued an Order (ECF 82), by consent (ECF 81), requiring defendant to begin production of the documents sought by the government, with various deadlines for production.

Of relevance here, in the interim, on July 17, 2024, I entered an Order for Default Judgment (ECF 67) as to all defendants. Defendant, pro se, filed the Motion on August 13, 2024. ECF 75. No other defendant has moved to vacate the default judgment.

### III.    Discussion

#### A.

On July 17, 2024, the Court entered an Order granting default judgment in favor of the Government and against Britton-Harr and his corporate entities. ECF 67. As noted, the Order expressly allowed any party to move to vacate the Order within fourteen days of service. Britton-Harr timely moved to vacate. ECF 75.

Pursuant to Fed. R. Civ. P. 55(c) and Rule 60(b) (ECF 75 at 1; *id.* ¶ 23), defendant asks the Court to "set aside the Order of Default Judgment against him." *Id.* ¶ 24. He states, *id.* ¶ 23: "Three criteria are generally used to establish the 'good cause' required under Rule 55(c): (1) whether the default was willful; (2) whether the moving party has presented a meritorious defense; and (3) whether setting aside the default would prejudice the party who secured the entry of default" (*First Interstate Bank of Oklahoma, N.A. v. Serv. Stores of Am., Inc.*, 128 F.R.D. 679, 680 (W.D. Okla. 1989))." (Italics added).

Britton-Harr contends that he has met the requisite criteria. He asserts that his "failure to timely respond to the Complaint [was] not willful." *Id.* ¶ 25. He also maintains that his Motion is made in good faith because he has "meritorious defenses to the claims of Plaintiff," which "are contained within the contracts of third parties and written correspondence." *Id.* ¶ 26. And, he contends that the Government "will not be prejudiced by the Court setting aside the entry of default." *Id.* ¶ 27.

Fed. R. Civ. P. 55(b) governs default judgments. In particular, Rule 55(b)(1) provides that the clerk may enter a default judgment if plaintiff's claim is "for a sum certain or a sum that can be made certain by computation."[10] But, "[a] plaintiff's assertion of a sum in a complaint does not make the sum 'certain' unless the plaintiff claims liquidated damages; otherwise, the complaint

---

[10] If the sum is not certain or ascertainable through computation, the court looks to Rule 55(b)(2) ("The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.").

must be supported by affidavit or documentary evidence." *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (Grimm, M.J.).[11]

Entry of default judgment under Rule 55(b)(2) "is left to the discretion of the court." *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). Nevertheless, the Fourth Circuit has a "strong policy favoring the disposition of cases on the merits . . . ." *Rangarajan v. Johns Hopkins Univ.*, 917 F.3d 218, 229 (4th Cir. 2019) (discussing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)), *cert. denied*, ___ U.S. ___, 139 S. Ct. 2762 (2019); *see Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 376 (4th Cir. 2013); *Tazco, Inc. v. Dir., Off. Of Workers Comp. Program, U.S. Dep't of Lab.*, 895 F.2d 949, 950 (4th Cir. 1990). However, the policy is not absolute. Thus, default judgment "'is appropriate when the adversary process has been halted because of an essentially unresponsive party.'" *Garnier-Thiebault, Inc. v. Castello 1935 Inc.*, SDT-17-3632, 2019 WL 6696694, at *1 (D. Md. Dec. 6, 2019) (Thacker, J., sitting by designation) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013)); *see Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC,* 958 F. Supp. 2d 588, 593 (D. Md. 2013); *Lawbaugh*, 359 F. Supp. 2d at 421.

As mentioned, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) (citations omitted). But, a court must balance "the manifest preference for trials on the merits" stemming from "interests in finality and repose," against the court's "concern lest an already-

---

[11] Judge Grimm authored *Monge* when he served as a United States Magistrate Judge. He later became a United States District Court Judge. He has since retired.

burdened judicial system be compromised by frivolous and unnecessary proceedings." *United States v. Moradi*, 673 F.2d 725, 727–28 (4th Cir. 1982).

In the case of a default judgment, all of plaintiff's factual allegations, other than those pertaining to damages, are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (stating that the court accepts as true the well pleaded factual allegations in the Complaint as to liability). If the court is satisfied that liability has been established, it must then determine the appropriate amount of damages. *Id.* at 780–81.

Allegations "relating to the amount of damages" are not deemed admitted based on a defendant's failure to respond to a suit. Fed R. Civ. P. 8(b)(6); *see Monge*, 751 Supp. 2d at 794; *Trs. Of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, Inc.*, DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."); *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09cv00004, 2009 WL 1872535, at *1 (W.D. Va. June 30, 2009) ("Upon default judgment, Plaintiff's factual allegations are accepted as true for all purposes excluding determination of damages.").

Rather, the court must make an independent determination regarding allegations as to damages. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). However, the court may also make a determination of damages without a hearing, so long as there is an adequate evidentiary basis in the record to support an award of the requested damages. *See Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) ("[T]he court may rely on detailed affidavits or documentary evidence to determine the appropriate sum."); *see also Trs. Of the Nat'l Asbestos Workers Pension*

16

*Fund v. Ideal Insulation*, Inc., ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011) (determining that, in a case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the damages requested"); *Monge*, 751 F. Supp. 2d at 795 (same); *Pentech Fin. Servs., Inc.*, 2009 WL 1872535, at *2 (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment because plaintiff submitted affidavits and records establishing the amount of damages); *JTH Tax, Inc. v. Smith*, Civil No. 2:06CV76, 2006 WL 1982762, at *3 (E.D. Va. June 23, 2006) ("If the defendant does not contest the amount pleaded in the complaint and the claim is for a sum that is certain or easily computable, the judgment can be entered for that amount without further hearing.").

Fed. R. Civ. P. 55(c) is pertinent here, because it governs a motion to vacate a default judgment. It states: "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." In turn, Rule 60 is titled "Relief from a Judgment or Order." Rule 60(b) states: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1) to (6). A motion under Rule 60(b) must be made within a reasonable time. Fed. R. Civ. P. 60(c)(1).

As the Fourth Circuit has said, "[t]o obtain relief from a judgment under Rule 60(b), a moving party must first show (1) that the motion is timely, (2) that he has a meritorious claim or defense, and (3) that the opposing party will not suffer unfair prejudice if the judgment is set aside. The party must also satisfy one of six enumerated grounds for relief under Rule 60(b)." *United States v. Welsh*, 879 F.3d 530, 533 (4th Cir. 2018) (internal citation omitted); *see Choice Hotels Int'l, Inc. v. Bonham*, 125 F.3d 847 (4th Cir. 1997); *Johnson-Lancaster & Assocs., Inc. v. H.M.C, Inc.*, GLR-20-992, 2020 WL 13592932, at *1 (D. Md. Nov. 2, 2020); *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, RDB-10-0318, 2012 WL 1145027, at *2 (D. Md. Apr. 3, 2012). Moreover, "[w]hen making a motion under Rule 60(b), the movant 'must clearly establish the grounds therefor to the satisfaction of the district court,' and such grounds 'must be clearly substantiated by adequate proof.'" *Johnson-Lancaster*, 2020 WL 13592932, at *1 (quoting *In re Burnley*, 988 F.2d 1, 3 (4th Cir. 1992)) (citations omitted).

Despite the preference for resolution of cases on the merits, motions to vacate or set aside judgments are not always granted. *See, e.g.*, *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126 (4th Cir. 1992) (affirming district court decision); *Gonzalez v. Mogotillo Rest., LLC*, TDC-21-2063, 2023 WL 5608431 (D. Md. August 30, 2023) (denying a motion to set aside default judgment under Rule 60(b) because the defendant knew he was being sued and took no action); *see also Citibank, N.A. as trustee for Am. Mortg. Inv. Tr. 2004-3 v. Berliner*, JKB-17-1172, 2019 WL 3892559, at *2 (D. Md. Aug. 19, 2019); *Hawkins v. MV Transportation, Inc.*, PJM 15-2169, 2017 WL 5716757, at *5 (D. Md. Nov. 27, 2017); *H & W Fresh Seafoods, Inc. v. Schulman*, 200 F.R.D. 248, 255 (D. Md. 2000).

**B.**

As noted, Britton-Harr seeks to vacate the default judgment, claiming that his failure to respond to the suit was not willfull (ECF 75, ¶ 25); he has meritorious defenses (*id.* ¶ 26); and the Government will not be prejudiced. *Id.* ¶ 27; *see also id.* ¶ 23 (citing the criteria for setting aside an entry of default). I shall address these contentions, in turn.

"Courts have held the default to be willful when a defendant simply ignores a complaint without action." *Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 454 (S.D.N.Y.2007), *aff'd*, 316 F. App'x 51 (2d Cir. 2009); *see also Marziliano v. Heckler*, 728 F.2d 151 (2d Cir. 1984); *Brown v. DeFilippis*, 695 F.Supp. 1528, 1530 (S.D.N.Y. 1988); *FedEx TechConnect, Inc. v. OTI, Inc.*, No. 12 CIV. 1674 RJS, 2013 WL 5405699, at *6 (S.D.N.Y. Sept. 23, 2013). Defendant's assertion that his conduct was not willful is belied by the record.

Defendant was aware of the Government's investigation since 2020. ECF 75, ¶ 3. In July 2023, the Government filed suit against the defendants. ECF 1. Through counsel, defendants waived service. ECF 4 to ECF 9. Yet, defendant failed to respond. *See* Docket. On September 25, 2023, the Clerk entered an Order of Default against all defendants. ECF 17. On the same date, the Clerk mailed a "Notice of Default" to defendants, advising them that they had 30 days to move to vacate the Order of Default. ECF 18. No motion was filed.

Then, on November 30, 2023, the Government filed a "Motion for Default Judgment" against all defendants. ECF 29. Again, Britton-Harr never responded. Nor did he respond to the Government's revised, proposed order for default judgment, submitted on June 13, 2024. ECF 58.

In his Motion, defendant explains that he retained counsel in 2020 (*i.e.*, before suit was filed), but his lawyers terminated their representation of him on August 13, 2023 (*i.e.*, a month after suit was filed). ECF 75, ¶¶ 3, 7. He also claims that he was "inundated with allegations and

other litigation" (*id.* ¶ 11); defendant's family "was unable to financially secure counsel" (*id.* ¶ 10); and defendant had "financial constraints" (*id.* ¶ 15).

As the Government contends, "Britton-Harr was well-aware of this litigation, the entry of default, and the United States' motion for default judgment, yet he chose to take no action."  ECF 79-2 at 7.  Notably, defendant does not claim that he was unaware of the suit, the Order of Default, or the government's Motion for Default Judgment.

Also of import, this is not a case in which there was a rush to judgment by the Court.  To the contrary, many months elapsed between the filing by the Government of its Motion for Default Judgment in November 2023 and the Order granting it in July 2024.  *See* ECF 29, ECF 67.  And, in the interim, defendant took steps to protect himself when he saw fit to do so.  Yet, defendant never bothered to respond to the suit or to the default judgment motion.

For example, on January 3, 2024, the Government filed a "Motion to Hold Patrick Britton-Harr in Contempt."  ECF 31.  The Court scheduled a show cause hearing for February 6, 2024 (ECF 33) and directed the Government to personally serve defendant with the Order to Show Cause, which also referenced the clerk's entry of default and the then pending Motion for Default Judgment.  *See* Docket; ECF 33 at 2.  Defendant appeared in court on February 6, 2024.  ECF 37.  At the hearing, defendant requested a postponement in order to obtain counsel, and the Court granted that request.  *Id.*; *see* ECF 40; ECF 78.

Defendant's appearance in court indicates that he was clearly aware of the litigation and the serious measures the Government was pursuing.  Moreover, at the hearing I explicitly referenced the clerk's entry of default and the pending Motion for Default Judgment.  *See* ECF 78.  But, defendant still made no effort to respond to the suit or to oppose the Motion for Default Judgment.

Soon after the show cause hearing, on February 13, 2024, counsel from the law firm of Greenberg Traurig LLP entered a limited appearance on behalf of Britton-Harr. ECF 38. Their appearance was "for the sole purpose of . . . represent[ing] him at the contempt hearing" (*id.* ¶ 3) regarding the Government's motion to hold Britton-Harr in contempt (ECF 31). And, they subsequently consented to the entry of an Order granting the Government's First Contempt Motion. ECF 47 at 3. Therefore, by Order of March 4, 2024 (ECF 48), I granted the Government's First Contempt Motion and ordered defendant to deposit $575,000 into the Court's Registry. ECF 48. Britton-Harr deposited $32,426 into the Registry of the Court on May 2, 2024. *See* Docket; *see also* ECF 51 at 1. Then, defense counsel from Greenberg Traurig LLP moved to withdraw from the case on May 31, 2024. ECF 54.

On June 14, 2024, the Government filed another motion to hold Britton-Harr in contempt, this time with regard to his failure to provide discovery, as set forth in ECF 30-3. ECF 59. By Order of June 21, 2024 (ECF 60), I directed Britton-Harr to show cause at a hearing on July 31, 2024, as to why he should not be held in contempt for failure to provide the discovery requested in ECF 30-3. *Id.* at 7.

Of import, in the Order of June 21, 2024, I made clear that defendant faced possible incarceration and, if he could not afford a lawyer, I would entertain his request for appointment of counsel. Notably, defendant requested an attorney on July 11, 2024. ECF 65; ECF 65-1. This again demonstrates that defendant was aware of the litigation, as well as the potential consequences of inaction. Yet, he continued to ignore the suit itself and the Motion for Default Judgment, filed months earlier in November 2023.

As of July 30, 2024, the date defendant was served with the Order of Default Judgment (ECF 74), it had been more than one year since the Complaint was filed; more than ten months

since the response to the suit was due; about eight months since the Government moved for default judgment; and approximately six months since defendant had appeared in court at the show cause hearing on February 6, 2024.   After the show cause hearing, defendant obtained counsel for a limited issue, filed various status reports, and followed, in part, the Court's Order to deposit money into the Court Registry.   ECF 48.   Still, defendant never addressed the Complaint or the Motion for Default Judgment.

As to the Motion for Default Judgment, the Court was not satisfied with Government counsel's proposed order.   Therefore, on May 3, 2024, during a telephone conference with Government counsel and defense counsel, the Court directed the Government to submit a more fulsome order.   The Government did so on June 13, 2024.   ECF 58.[12]   Yet, defendant never responded to or opposed that submission.

In sum, I conclude that defendant's failure to respond to the suit was knowing, purposeful, and willful.

## C.

The second criteria concerns whether the defendant has a meritorious defense.   Britton-Harr asserts he has "meritorious defenses" to plaintiff's claims, which "are contained within the contracts of third parties and written correspondence."   ECF 75, ¶ 26.

Defendant explains: "Defendants had contracted and hired third party operators Dr. Tarun Jolly, Dr. Jim Silliman, Dr. David Vigerous along with Bo Silliman, Vita Health and Sensiva Health for complete compliance and operation of the Laboratory entities Provista Health & Integra Molecular in March 2020."   ECF 75, ¶ 4.   He adds: "Meg Samek Smith was the Chief Operating

---

[12] As the record shows, the Court ultimately crafted its own Order.

Officer of Coastal Laboratories from March 2020 through July 2020 who managed the third party contractors," *id*. ¶ 5, and "G. Ellsworth Harris was CEO of AMSonsite from June 2020 through [the] end of 2022." *Id*. ¶ 6.  Then, in August 2023, defendant's lawyers, who had represented him since May 2020, "from the infancy of the Civil Investigation Demand letter," *id.* ¶ 3, terminated their representation.  *Id.* ¶ 7.

In paragraph 8 of the Motion, Britton-Harr claims that in July 2023, he secured a two-million-dollar loan against collateral to fund expenses and payroll of AeroVanti, Inc., which he had founded.  Further, he asserts that in July 2023 he resigned as Chairman and CEO of AeroVanti, Inc., the terms of which are outlined in a separation agreement.  *Id*.  And, according to defendant, Network1 Financial Securities is the "contracted investment bank of AeroVanti, Inc."  *Id*.

According to Britton-Harr, he secured the loan "at the direct request" of Damon Testaverde of Network1 Financial Securities and AeroVanti CEO Scott Hopes.  He also asserts the loan was to be used to "pay employee payroll, aircraft leases, operating expenses and other loans to continue [AeroVanti's] operations uninterrupted," and Hopes and Testaverde had "direct control of use of those funds."  *Id*.

In addition, Britton-Harr maintains that Hopes, acting as AeroVanti's CEO, and Testaverde, acting as Network1 Financial Securities' CEO, "through direct intention and malfeasance, fraudulently neglected the proper use of funds, defaulted on repayment of the loan along with intentionally defaulting on the separation agreement for personal gain to take over defendant[']s company AeroVanti and 16[-]acre Land Build Lease at the Sarasota Bradenton Airport."  *Id*. ¶ 9.  And, due to the actions of Hope and Testaverde, whose intention, according to defendant, was to bankrupt Britton-Harr, "defendants [sic] family was then left without any income and was effectively unable to financially secure counsel."  *Id*. ¶ 10.

23

Further, defendant claims that Hopes, "[a]s CEO of the Aerovanti entities . . . did not retain counsel to respond to the Complaints served on the Aerovanti entities and Defendant." *Id*. ¶ 12. Nor did Hopes submit the Government's claims to the companies' insurance carrier. *Id*. Moreover, Britton-Harr posits, *id*.: "Hopes abandoned his responsibilities as Chief Executive Officer and further refused to resign or to consent to his removal from his officer position." Defendant adds, *id*.: "A contested shareholder action removed Hopes from his management position effective October 16, 2023." *Id*. Since then, "new management," including defendant, "asserted control of the Aerovanti entities, including defense of pending litigation." *Id*.

Defendant recounts that the Aerovanti entities and defendant submitted claims to their insurance carrier on October 18, 2023. *Id*. ¶ 13. And, he claims that counsel was assigned to the Aerovanti entities. *Id*.

The Government counters that defendant "fails to identify these allegedly meritorious defenses or how the terms of any third-party contract refutes the elements of the False Claims Act." ECF 79-2 at 5. Therefore, it contends that Britton-Harr has not "'clearly established' the grounds for his requested relief." *Id*.

Defendant does not explain the connection of the "Aerovanti entities" to this case, which involves claims of Medicare fraud. Nor does Britton-Harr explain how his assertions would exculpate him. And, AeroVanti, Inc. and Network1 Financial Securities are not defendants in this case.

Moreover, even if there were a connection between AeroVanti, Network1 Financial Securities, and the defendants named in the Complaint, Britton-Harr states that new management, which includes him, "asserted control of the Aerovanti entities, including defense of pending litigation," after October 16, 2023. *Id*. ¶ 12. As stated, the Government's default judgment motion

was filed in November 2023, which is after the time that Britton-Harr admits he took control of these entities. And, as stated earlier, the defendant never responded to the suit or to the default judgment motion.

I conclude that defendant has failed to present a meritorious defense.

### D.

The third factor relates to unfair prejudice to the opposing party. The Fourth Circuit has said that the "prejudice factor is of lesser importance" than the meritorious defense factor. *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 265 (4th Cir. 1993); *see also Compton v. Alton Steamship Co.,* 608 F.2d 96, 102 (4th Cir.1979) ("[T]he court should in every case give some, though not controlling, consideration to the question whether the party in whose favor judgment has been entered will be unfairly prejudiced by the vacation of his judgment.").

Britton-Harr asserts that the Government "will not be prejudiced by the Court setting aside the entry of default." ECF 75, ¶ 27. The Government disagrees, contending that it would be "significantly prejudiced" if the Court were to vacate the default judgment. ECF 79-2 at 5.

According to the Government, it "anticipated potential challenges with recovering funds from Britton-Harr to satisfy an eventual judgment," and therefore requested "prejudgment remedies under the Federal Debt Collection Procedures Act to identify and preserve Britton-Harr's assets to satisfy a potential judgment." *Id.* But, the Government points out that Britton-Harr has "already been found in civil contempt for selling his house and dissipating those funds, allegedly to his other business, instead of preserving those funds to satisfy his debt to the United States." *Id.* It maintains that any further delay of this matter would prejudice the Government "by giving Britton-Harr even more time to dissipate assets and hinder the ability of the United States to collect on its debt." *Id.*

25

To constitute unfair prejudice, the harm must be more than "the inevitable result whenever a judgment is vacated." *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 265 (4th Cir. 1993); *see also Westlake Legal Grp. v. Yelp, Inc.*, 599 F. App'x 481, 484 (4th Cir. 2015); *Davey Tree Expert Co. v. Moon Site Mgmt., Inc.*, CCB-19-1220, 2020 WL 230895, at *3 (D. Md. Jan. 15, 2020). "In the context of a motion to set aside an entry of default, as in other contexts, delay in and of itself does not constitute prejudice to the opposing party." *Colleton Preparatory Acad., Inc.*, 616 F.3d at 418; *see also Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). Rather, "the issue is one of *prejudice to the adversary,* not merely the existence of delay." *Id*. (emphasis in original).

Thus, to constitute prejudice, the delay must "'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Musler*, 713 F.2d at 916 (citing 10A *Charles A. Wright, et al., Fed. Practice & Procedure: Civil* § 2699, at 169 (3d ed.1998)); *see also New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005). Of relevance here, prejudice may also be found when there is evidence that the defendant "is seeking to evade payment of its debt" to plaintiff and vacating the judgment would provide the defendant with "further opportunities to hide its assets or otherwise evade payment of its debts." *FedEx TechConnect, Inc.*, 2013 WL 5405699, at *9.

In *Colleton Preparatory Acad., Inc.*, 616 F.3d 413, the Fourth Circuit disagreed with "the district court's view that undue prejudice would have been visited upon [the plaintiff] if the entry of default had been set aside . . . less than three months after a timely answer to the complaint would have been filed and the case made ready for the commencement of discovery." *Id.* at 418–19. The Court added: "[T]he course of the trial court proceedings in this case, even with the default left in place, from the damages trial . . . to final judgment . . . (more than four years) was

reasonably foreseeable . . ., given the magnitude of Colleton's claims (against what was then two distinct defendants) and the character of the defenses asserted. Discovery (including expert discovery) and related pretrial proceedings surely would be expected to consume a reasonable period of time." *Id.* at 419.

*First Interstate Bank*, 128 F.R.D. 679, is also informative.  There, the court found that the plaintiff there suffered no prejudice when defense counsel docketed the answer one day late, because of the intervening Thanksgiving holiday and a "serious family illness." *Id.* at 679–80. Such an argument cannot be made here, where defendant has had months to respond to the Complaint; to move to vacate the order of default; and to oppose the motion for default judgment. He did not do so.

Defendant's actions in this case have demonstrated that the Government's concern about Britton-Harr's dissipation of assets, thereby hampering the Government's ability to recover for its losses, is not unfounded.  As discussed, the Court issued a Writ Of Attachment as to the Cornhill Property in August 2023.  ECF 11; ECF 12.  Yet, in direct violation of the Court's Order of August 3, 2023 (ECF 11) and the Writ Of Attachment docketed August 4, 2023, (ECF 12), defendant's company sold the property in September 2023.  *See* ECF 31-2.  Then, despite an Order (ECF 48) to deposit the proceeds of sale, *i.e.*, $575,000, into the Court's registry, defendant merely deposited $32,426.  Even then, he did so only after he faced possible incarceration.  *See* Docket; *see also* ECF 48.  It is reasonable to conclude that continued delay will lead to further dissipation of assets by defendant or, at the least, impede the Government's ability to recover for its losses.

Defendant has also failed to comply with his discovery obligations.  *See* ECF 30-1 at 3. The Court's Order of January 3, 2024, required defendant to produce documents and provide interrogatory responses.  Yet, defendant did not engage in the discovery process until August 27,

2024, after he again faced the prospect of incarceration.  *See* ECF 81, ECF 82.  Any additional delay that would result from setting aside the default judgment would likely "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion."  *Davis*, 713 F.2d at 916.

In sum, I am satisfied that the Government would be prejudiced if the default judgment were vacated.

## E.

Defendant must also establish one of the six factors under Rule 60(b).  The Government argues that "Britton-Harr makes no argument as to four of the six grounds in Rule 60(b): newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); fraud or misconduct of an adverse party; a void judgment; and a satisfied judgment."  ECF 79-2 at 7. Rule 60(b)(3) requires "fraud . . . , misrepresentation, or misconduct *by an opposing party*" (emphasis added).  And, as the Government notes, Britton-Harr's allegations of fraud or misconduct by Hopes (former AeroVanti CEO) and Testeverde (CEO of Network1 Financial Securities), are not those of an adverse party in this litigation, and thus "fail[] to satisfy Rule 60(b)(3)."  ECF 79-2 n.3.

Moreover, the Government argues that it was "Britton-Harr's own decisions [that] led to the entry of default judgment, not through any mistake, inadvertence, surprise, or excusable neglect."  ECF 79-2 at 7.  As stated, *id*.: "Britton-Harr was well-aware of this litigation, the entry of default, and the United States' motion for default judgment, yet he chose to take no action. The Court explained the current status of the litigation and pending default judgment motion to Britton-Harr at an in-person hearing regarding his civil contempt. . . . Britton-Harr ignored these opportunities [to address the suit and] . . . to defend himself against the Complaint's allegations."

28

The Government also points out that, by Britton-Harr's own admission, he obtained legal counsel to represent him "specifically regarding this case from the infancy of the Civil Investigative Demand letter." ECF 75 at 1. Thus, the Government aptly argues, "Britton-Harr knew how to hire counsel and presumably understood the importance of hiring an attorney and not ignoring litigation. Britton-Harr is not an unsophisticated defendant. He has created multiple companies and entered into many business relationships where he was assisted by legal counsel. He makes no coherent argument as to why his conduct was excusable or inadvertent." ECF 79-2 at 7.

Moreover, according to the Government, defendant also "has failed to clearly establish any support for Rule 60(b)'s 'catch all' provision for 'any other reason justifying relief.'" *Id*. For example, in *Johnson-Lancaster*, 2020 WL 13592932, at *2, the motion to vacate the default judgment was granted because the clerk's initial entry of default against the defendant was made in error. *See id*. ("Pursuant to the Standing Orders, HMC's Answer to the Complaint was not due on May 18, 2020, as the docket indicated. Rather, its Answer was due on August 10, 2020. Accordingly, the Clerk's Entry of Default against HMC on June 2, 2020 (ECF No. 13) was in error."). In *Srivastava v. Kelly Servs., Inc.*, LKG-19-03193, 2021 WL 6883458, at *2 (D. Md. Dec. 21, 2021), the motion to set aside the court's default judgment was granted because the plaintiff did not properly serve the defendant under Fed. R. Civ. P. 4. No such circumstances are present here.

Thus, I conclude that defendant fails to satisfy any of the six enumerated grounds for relief under Rule 60(b).

## IV.    Conclusion

Defendant has not made a showing that his conduct was not purposeful; that he has a meritorious claim or defense; that the opposing party will not suffer unfair prejudice; or that he has satisfied one of the six enumerated grounds for relief under Rule 60(b).  Accordingly, I shall deny defendant's Motion.

An Order follows, consistent with this Memorandum Opinion.


Date:  October 7, 2024                                            _____/s/_____

                                                                                   Ellen Lipton Hollander
                                                                                   United States District Judge